Page number 24-1363, et al. Public Safety Spectrum Alliance and Public Safety Broadband Technology Association Petitioners versus Federal Communications Commission and United States of America. Ms. Hamilton for the Petitioner's Coalition for Emergency Response and Critical Infrastructure, et al. Mr. Overholt for Petitioner's Public Safety Spectrum Alliance and Public Safety Mr. Turner for Intervener's National Procurement Order of Police and Public Safety Spectrum Alliance. Good morning, Ms. Amundson. Good morning, Your Honors. May it please the Court. My name is Jessica Ring Amundson, and I represent the Coalition for Emergency Response and Critical Infrastructure, along with our co-petitioners, the San Francisco Bay Area Rapid Transit District, the National Sheriffs Association, and the California State Sheriffs Association. In the Spectrum Act in 2012, Congress created a new federal entity called FirstNet, and then ordered the Commission, which otherwise did not have authority to grant licenses to federal entities, to reallocate a specifically defined 20 MHz of spectrum from public safety entities to the new federal entity, FirstNet, and to issue a quote, single license to FirstNet. In the order under review without any further statutory authorization, the Commission granted FirstNet, and by extension, its commercial partner, AT&T, which operates the FirstNet network, access to an additional 50 MHz of spectrum on an entirely different band that for decades has been dedicated to use by state and local public safety entities. The Commission used a workaround to circumvent the statutory prohibition on its authority to issue licenses to federal entities directly, but each step of that workaround is independently contrary to law. This order is very, it's a very odd combination of being final on some questions and interlocutory on others. Take your point that all of this seems geared to shifting spectrum from incumbent licenses to FirstNet, and that seems problematic when the FCC is doing it, and NTIA is not involved. But they say, they reserve two critical questions. One is whether the band manager will ever get a license at all, and number two, whether the contemplated agreement between the band manager and FirstNet will be approved. And so if those two things are up in the air, this concern about the workaround has a little bit of a ripeness question to it. I mean, it might or might not happen, so why would we strike this order now based on, I mean, if either of those contingencies fail, the workaround won't happen. So, Your Honor, I think that the order is clear that those contingencies are going to happen, and so where you can look is in paragraph 21 of the order where the commission says that the best mechanism for putting unassigned spectrum to use as quickly and efficiently as possible is to assign a nationwide overlay license to the band manager. And then if the court also looks at the actual ordering clauses and the rule that the commission adopts, which is at JA 706, the new rule 90.1217, the band manager is charged with, quote, managing a sharing agreement with the first responder's network authority. So the commission is quite clear that while I think they are trying to sort of reserve some things to, you know, escape judicial review, what is happening here is this nationwide overlay license that's been passed through to FirstNet. And yet, I agree with that, and yet in footnote 107 they say band manager has yet to be selected, the bureaus will do that. We think this is going to work out to pick the most qualified person, and then we will review when and only when that happens, we will review the band manager's application for a license. I just don't know what to make of that. Well, I think what the court should look to is the actual rule that the commission adopts at 90.1217 where it says that the band manager's job is going to be to manage a sharing agreement with FirstNet. That's at, I think I just had it, JA 706, where it, so that is going to be. Will have the following. Right. So, this is the actual rule that they adopt. These are the responsibilities of the band manager, and the band manager is going to manage a sharing agreement with the first responders network authority. So, I take your Honor's point that at times the commission really is trying to have it both ways. They're trying to say, like, for purposes of the 309J exemption, we're going to rely on FirstNet that it's going to offer public safety services, but we're, because there's potentially a problem with the sharing agreement under Rule 2.103B, we're going to say it's kind of tentative whether we're actually going to. In our lawsuit on who the band manager is, but final on whoever it is the band manager has to try to do the work around. Exactly. The band manager is charged with being a pass-through of 50 megahertz of spectrum that Congress never authorized FirstNet to use to go to FirstNet. Ms. Adamson, so I've, I've, I take your arguments that FirstNet can only exercise the authorities that are given to it by Congress, but reading through the Spectrum Act, I get the sense that the initial license allocation is a floor and not necessarily a ceiling. And I'm wondering about the several provisions of the Spectrum Act that say FirstNet can contract with federal, state entities, other organizations. So, if FirstNet is given this ability to contract with other entities, why wouldn't that include something like a sharing agreement with the band manager? So, Your Honor, I think first, just to push back a little bit on reading the Spectrum Act to be sort of a floor for spectrum rather than, rather than the ceiling for spectrum, I think if you actually look through the text of the Spectrum Act. I've read the whole Spectrum Act. Congress is quite clear that it is talking about this specific 20 megahertz of spectrum. They go in Section 1401, it defines it specifically with reference to each frequency. In Section 1411, it instructs to reallocate the 700 megahertz C-block spectrum. In Section 1421, it defines- But there are other indications as well, though, where it talks about, you know, the authority. It says, you know, I mean, there are contrary indications. I mean, it mentions the specific band in some places, and then in other places, it suggests, you know, that this is, I'm just will initially consist of a core network, right? And then there are several kind of, I guess, what we call like with the Constitution, like sweeping clauses, right? That FirstNet can do, can exercise incidental powers, that they can exercise things that are appropriate to its responsibilities, and they are specifically given contracting authority. So, I guess, why does the contracting authority not cover the sharing agreement? That's- Because the contracting authority is limited to the spectrum that Congress specifically allocated and ordered the Commission to give FirstNet a license to. That license under Section 1421 was, quote, for the use of the 700 megahertz. But if they already have that license, then why do they need contracting within that band? Doesn't the contracting look outside of that band? Because what Congress- Or in addition to the band? So, Congress was limiting them to the 700 megahertz D-block spectrum. The contracting authority is with AT&T, which then uses that spectrum- Is AT&T a federal state agency? I mean, the contracting authority is quite broad. So, Your Honor, what I think the Spectrum Act, there is no indication in the Spectrum Act that, in fact, Congress meant to grant FirstNet access to spectrum other than the 700 megahertz spectrum. And if you look, for example, one might expect that the provision on, quote, maintenance and upgrades might say something about being allowed to go onto spectrum other than the 700 megahertz spectrum. The text is littered throughout with references that FirstNet is limited to the 700 megahertz spectrum. And the text also puts very important limitations. Your Honor is talking about the limitation on FirstNet's authority. The text also puts important limitations on the commission's authority, which are very important here as well. The Spectrum Act essentially charges the commission with doing just three things. So, first, it is supposed to reallocate the 700 megahertz D-block spectrum and facilitate its transfer. Second, it is supposed to award the, quote, single license for the use of the 700 megahertz. Okay. I mean, those are a couple of mentions. What about 1426B, B1D, which says, so one of the duties and responsibilities is, at a minimum, they list all these things, which includes managing and overseeing the implementation and execution of contracts or agreements with non-federal entities to build, operate, and maintain the network. Exactly, Your Honor. And the network is the network that has been defined on the 700 megahertz D-block spectrum. Where is the network limited to the 700 megahertz? If you look at the license that is allowed to be granted, which is under 1421A, the commission shall reallocate a license to the first responder network authority, quote, for the use of the 700 megahertz D-block spectrum and existing public safety broadband spectrum. And before Your Honor thinks that existing public safety broadband spectrum is something broader than the 700 megahertz spectrum, Your Honor should refer back to section 1401, which defines existing public safety broadband spectrum with reference to specific frequencies from 763 megahertz to 768 megahertz and so on. So Congress was quite specific here, both about what it wanted FirstNet to be, and it seems sort of inconceivable that Congress would have gone so far as to legislate things like the daily per diem for FirstNet's board members and not mention that FirstNet would have access to potentially 50 megahertz of additional spectrum, a fact that would have been extremely important for those who were bidding on the RFP for the 20 megahertz of spectrum to know at the time. So why, so the contracting, the broad contracting authority, which is mentioned twice in the statute, cannot include contracting outside of the 700 megahertz band. That's the position. That's what FirstNet is limited to in this is the 700 megahertz D-block spectrum and that Congress was extremely clear about that. But also the broad contracting provision with federal, state, local organizations doesn't include outside the 700 band. It is for operation of the national public safety broadband network, which is limited to the 700 megahertz D-block spectrum. That is what the contracting authority is limited to, Your Honor. And importantly, the commission, as I said, the commission's authority is likewise limited by the spectrum act. So it does just seem very odd that Congress would have so issued such detailed specifications and yet forgot to mention that actually FirstNet could get access to an additional 50 megahertz of spectrum worth $15 billion. If I could turn... Your lead argument rests on an inference from a regulatory structure under which the FCC allocates and manages, allocates spectrum to non-federal entities and manages those entities and NTIA allocates spectrum to federal entities and manages those entities. If that's true, why did Congress require the FCC to grant the initial license to FirstNet? Because this was a one-time carve-out from the ordinary default principle and that's why, in fact, you needed legislation to do this. This was spectrum that was, that was being used, the 700 megahertz D-block spectrum was spectrum that was being used under the auspices of the FCC by state and public local... They already had non-federal entities in that band? Yes, there were already non-federal entities in that band who had to be relocated and the spectrum had to be reallocated. So that's why the Congress ordered the commission to do that with respect to this single license and that's why what the commission had to do here, initially FirstNet and PFSA urged the commission to just grant FirstNet a license directly. Once Cersei and others pointed out that that would be unlawful, they pivoted this whole workaround situation which circumvents the important limitations that Congress placed on their authority. Does NTIA, in fact, regulate federal licensees the way the FCC regulates non-federal licensees? It's an aspect of the case that's very puzzling to me. I would think that agency should be front and center in this dispute and they are oddly silent. NTIA assigns spectrum to federal agencies. I am not as familiar with exactly how NTIA, other than what the FirstNet entity does here, what NTIA does with respect to how it oversees other federal entities' use of spectrum. But here the authority that we are challenging is the commission's authority and FirstNet's authority. If I could turn to just the workaround and why each of the aspects of it are independently contrary to law. I mean, just for your benefit, I'll tell you that argument has a lot more intuitive force, at least in my mind, if NTIA is this independent regulator that is and should be handling federal entities like FirstNet. Well, it is. I mean... As opposed to just, you know, some formal thing that makes the initial assignment of spectrum and then FCC is effectively regulating everything. Right. I mean, what's happening here is FirstNet knows that it should have needed to go to Congress to ask for more spectrum. And instead, FirstNet went to the commission to ask for more spectrum. Why couldn't they go to NTIA? The statute says NTIA assigns spectrum to federal entities. It would seem like that's what should have happened. Well, what did happen is that they went to the commission and the commission established this whole workaround. So the commission used the 309J exemption. Do you agree that they could have gone to NTIA? They could have. I assume that they could have lobbied NTIA as well. But I think NTIA realizes that Congress needed to allocate additional spectrum. Could NTIA at this point just bless this and say, yes, we agree with what the FCC is doing to the extent we are responsible for assigning spectrum of FirstNet, we authorize spectrum to operate in this other band? No, because this is state and local public. This is spectrum where there are incumbent state and local public safety entities that the commission oversees. So this is spectrum where NTIA doesn't have authority over this spectrum. The commission has authority over this spectrum. It's taking spectrum that is being used by state and public local... The statutes are key to whether the broadcaster is a federal entity or not. I'm sorry, Your Honor? The statutes, as I understand it, the FCC assigns spectrum to non-federal entities, the NTIA to federal entities. So you said what matters is who is already operating in that other band. It seems to me what matters in terms of who the regulator is, is the entity federal or not? And the entities in this band are not federal. Right now, the existing incumbents in the band are state and local public safety entities, and it is spectrum that the commission... We're going around in circles. In your view, the workaround is to enable NTIA... I'm sorry, is to enable FirstNet to operate in the other band. Yes. FirstNet is a federal entity. They're the government agency that tells them what bands they can or can't operate in is NTIA. Yes. So what the problem here is is that the commission is circumventing the limitations on its authority, and it's doing so with a workaround that is both steps are independently contrary to law, because the band manager does not qualify for the public safety services exemption under Rule 309J. And then there is also the problems with the sharing agreement under Rule 2.103B, because there is no actual consent being provided by the state and local public safety entities. Well, but the order specifically reserves that any sharing agreement that occurs in the future has to be compliant with the regulation. Is that right? It does. And that's why we think it's also sort of arbitrary. It might not comply, but the commission specifically says that for there to be a sharing agreement, it has to comply with the regulatory requirements. Right. And that's where we see the commission is really trying to have things both ways. On the one hand, it's trying to claim the public safety services exemption by saying, well, of course, FirstNet's going to be there, and FirstNet provides public safety services. On the other hand, they're trying to say, oh, actually, we're kind of being tentative about whether the sharing agreement is actually going to happen or not. So that is sort of an additional reason why the commission's decision is arbitrary and capricious. If I could touch briefly on just the reliance interest in state care. Can I just ask you one other statutory question? I mean, Section 1422, which defines the public safety broadband network, doesn't make any mention of the 700 megahertz. What do you make of that? Section 1422 says that... Which actually defines the network, right? That the network is, it has to ensure the establishment of a nationwide interoperable public safety network, and then it talks about all the network components, none of which are limited to the band. Right. But I think Your Honor has to read that provision in concert with all the other provisions. 1401, that defines the actual spectrum at issue. 1411, that says reallocate the 700 megahertz D-block spectrum. 1421, that says... But the network itself, you're saying, is limited to that band. So, I mean, one way to read the statute is we create, Congress creates a network, and it assigns it a license. But does that mean it's exclusive to other share, like, that it could never, like, through contract or some other agreement, operate outside that band? I think that's the difficulty. So, what is happening here, though, is Congress sort of reallocated 20 megahertz from state and local public safety entities in this statute. What the Commission is doing now, with no other statutory authorization, is saying, here you go, FirstNet, here's another 50 megahertz of spectrum on an entirely different band. It's worth $15 billion. This is something that would have been, as I mentioned earlier, very helpful for people who were bidding on the initial contract for the FirstNet authority to know that it was not just 20 megahertz of spectrum that was going to be at issue, but an additional 50 megahertz, and potentially even more under the Commission's reasoning. It could allow FirstNet to take over any other bands. Isn't, like, 50 megahertz the way you're defining, though? I mean, not all of that is available for FirstNet to use, right? It's just the parts that are, you know, in the, like, the unassigned parts or the unused parts of the spectrum. So, what the Commission's order actually says at paragraph 24 is that the band manager will be, and I'm quoting here, the band manager will be authorized to enable FirstNet to operate anywhere within the geographic area of the overlay license. And then when an incumbent licensee cancels or terminates its license, or its license is canceled or terminated for lack of use or something, it is that the spectrum then becomes available for sharing. Not all FirstNet, but whatever is unused or becomes, is later canceled or terminated. Right. And that's sort of the independent problems that we have raised about the fact that the whole point of the order is, in fact, also requiring this license substitution process, where incumbents have to forfeit their broad geographic licenses that they have been relying on for years and making investments in the idea that they can expand over time for these narrower site-based licenses. The effect of that is essentially to make additional unassigned spectrum available for sharing with FirstNet. And I would encourage the court, for example, to look at the comments that Bart submitted below or the declaration that Bart submitted in support of their stay application to show that, for example, these entities made billion-dollar investments in reliance on the idea that they could, in fact, expand over time. And what the commission says about that, it's really striking, actually, in paragraph 54 of their order, there's a single line, basically, where they dismiss the reliance interest by saying, we know people might have relied on their licenses to expand over time, but they tie it only to the fact that the licenses are currently frozen. And then they say, in fact, you know, you can seek a waiver if you need, which means that entities like Bart that used to be able to move base stations, add new base stations without commission approval now have to go back to the commission to fulfill their duties. I think some hard questions on legal authority and maybe some hard questions on reliance, but on the other hand, it seems like the commission had a very real problem here. It was responding to and just on an intuitive level responded in a very reasonable way. You have this band that's structured in a way that has proven to be suboptimal. It's underutilized. There's a public safety concern. And what do they do? They look to an entity that has built up this other public safety band with Congress's blessing and seems to be working pretty well. So why is it arbitrary to just replicate in the second band what first built up in the first one? So I think a couple responses to that, your honor. First, I think that is the commission's main argument here is sort of defer to our kind of judgment about spectrum efficiency and how to manage spectrum. But this isn't about sort of deference to technical expertise. This is about statutory authority and what's very clear from the second band. And as to whether it's arbitrary and capricious, what was arbitrary and capricious was dismissing the reliance interest of incumbents without saying more than literally a sentence about it. And I point the court to, as I said, paragraph 54 of the commission's order, where all they say, there's no sort of encino motocars weighing of reliance interest or anything like that. There's simply a, we think that actually this will give us a stable landscape to be able to assess current usage. And if you're really worried about something, you can get a waiver. But of course, a waiver does not fall in your rational rule. We also think, your honor, as to what was arbitrary is the commission ignored a lot of the FirstNet, the 20 OIG reports about FirstNet's lack of oversight of AT&T, the fact that FirstNet is sunsetting, the fact that FirstNet on the 700 megahertz currently only uses a fraction of that spectrum for public safety. And in fact, most of it is used for AT&T for its commercial subscribers. Doesn't the substantial underutilization at least suggest that there might be structural problems in the way they've handled this market and the licensees have to deal with all of this potential interference. And that seems to be keeping licensees away from bidding. And so, like, you know, you have the licenses, but they're not working out all that great for anyone. So, a couple of responses to that, your honor. First, what's kind of interesting is that while the commission talks a lot about underutilization, in fact, what the commission did in this order is for the first time require the granular licensing data from incumbents to be able to tell whether there actually is in fact underutilization. But even assuming that there is underutilization, the way to solve it is not by sort of taking away the broad flexibility that incumbents had to build their systems over time, but is and is not to kind of contravene statutory restrictions on their authority. We have, you know, in the last order, the commission did adopt sort of a band manager for purposes of frequency coordination, et cetera. We did not challenge the idea that a band manager could come in and help with frequency coordination. What we do challenge is the band manager getting a nationwide overlay license and serving as a spectrum to FirstNet and its commercial partner, AT&T, giving them a windfall that distorts the competitive marketplace as well. I just have a, could FirstNet, in your view, contract with incumbents separately on an individual basis to share spectrum or to help them utilize spectrum or something like that? So, under 2.103b, which is the sharing arrangement, an incumbent could, if it wanted to, it could contract with, it could reach a shared use agreement with FirstNet. However, what's happening here is that this is being sort of foisted upon incumbents with a band manager providing consent in place of the incumbents, which is not at all what that regulation is meant to provide. Is the band manager's authority to cover licenses that are held by incumbents? Doesn't it just operate in the spaces where there are non-incumbents operating? The band manager operates what is called a nationwide overlay license. So, it will sit on top of the incumbents and is also told to work with incumbents to, quote, rationalize their use of spectrum. So, the band manager, it appears, this order is not in place, will have an authority. For spectrum that is used by being held by an incumbent, the band manager couldn't force them to share with FirstNet, could they? They could not. Like their licensing, like their full licensing authority only occurs in the interstitial spaces where there isn't an incumbent. At least that's how I understood this. And those interstitial spaces are also being kind of multiplied by the commission's order. Yes. Right. Yes. So, the band manager is... The interstitial spaces are expanding because of the way they are shrinking the incumbent licenses, but they couldn't force the incumbents to share, the band manager couldn't force the incumbents to share what is actually within their license. I think that's right, Your Honor. But sort of what I'm trying to get at is that in the current status quo, they do have spectrum that the band manager will be forcing them to share because they are going to forfeit their geographic license for these narrower, smaller site-based licenses that the band manager will then get access to spectrum. So, the FCC is creating more spectrum that the band manager can then use to share with FirstNet. And so, your objections are in some ways like all interconnected.  Yes, Your Honor. The regulation seems like a very odd fit for what's going on here. Do you imagine a non-workaround situation, which is a federal entity, federal entity wants to use public safety bands with non-federal entities. This band is structured so that... How many licensees are there within this 4.9? There are currently about 3,500 state and local public safety entities, many of which hold statewide or countywide. Prong, too, says the federal entity has to get consent from the licensees involved. Unanimous consent from 3,500 licensees just doesn't seem to fit. So, what the rule contemplates is, to Judge Rowe's point earlier, right now, if an incumbent actually wanted to share spectrum with FirstNet, it could do so under 2.103b, where there actually was sort of mutual agreement. What's happening is that the commission is using this. You've got this weird public safety specific scheme where you don't have individual licensees on defined spectra. You have 3,500 of them allowed to operate anywhere in the band. Well, they hold licenses for their geographic areas. So, for example, a sheriff would hold a license for their legal jurisdiction, or BART holds a license for its five counties. And so, what is happening here is the commission is relying on this sharing arrangement regulation to basically have the band manager, who is not a state or local licensee, provide consent to share with FirstNet. So, I think Your Honor is correct that it is a very odd fit for what is actually happening here, and that may be why the commission sort of hunts on whether 2.103b would actually be satisfied by this arrangement, although that is, again, kind of arbitrary because the commission is elsewhere relying on the fact that FirstNet is going to be in the band and providing services. All right. Thank you. Thank you. We'll give you some time on rebuttal. Governor Fulton? Good morning, Your Honor. Excuse me. My plea is to the court. Blaise Boehm is involved on behalf of the Public Safety Spectrum Alliance and the Public Safety Broadband Technology Association. PSSA and PSBTA come at this case from a diametrically opposed perspective from the 4.9 gigahertz band to the band manager and authorize the band manager to enter into a sharing agreement with FirstNet, and its decision to do so was amply justified by the commission's recognition for over a decade that the 4.9 gigahertz band has been grossly underutilized. One study in the record estimates that more than 90 percent of this important public safety resource has not been used during the time that the commission has set it up for that use. So can we talk about standing for PSSA petitioners? I'm not sure that the standing theory is entirely apparent in your opening brief. And even with the additional material in the reply brief, I guess I'm wondering where's the redressability? So the primary claim of PSSA is that the commission should have gone further. But you're not bringing, like, an agency action lawfully withheld claim or something like that, which you really couldn't do because they're not required to do anything in this space. So where's the redressability? The theory of redressability for wanting an agency to do more? So under the APA, the SEC has to explain the lines it drew. And the entire thrust of the order is that making the spectrum potentially available to the FirstNet through a sharing agreement is the best way to robustly ensure deployment on this long underutilized resource. The lines that the agency drew in the rule, it does not explain. For one of our comments, one of the reasons this band has been underutilized for quite a while is these non-exclusive, overlapping, uncoordinated geographic licenses. The FCC acknowledged that we made that comment. It didn't offer any substantive response at all. The court sent that back for the FCC to consider that question. It could very well agree with us that these geographic licenses are part of what's contributing to underutilization. You want remand without vacator. Yeah. I mean, we are being injured by this order not being taken, not being given a full effect as quickly as possible. So we would ask for remand without vacator because they get, much of what the rule does, does do important work to sort of address. You presumably don't want the rule vacated because you want the rule to go further. Right. We want underutilization of this band to be addressed as quickly as possible. And I mean, in the FCC's brief, you know, we're talking about two territories and four states, but no one thinks there's only unused spectrum in this band in two territories and parts of four states. There is a lot of white spaces. The entire thrust of the rule is that allowing first access to that spectrum, they can put it to reductive use. They've already created this national network that at the time of the rule, over 6 million users were on. We're now almost 8 million. Redressability is tough, though, where you want the agency to do something rather than not do something. So when a party comes and says, well, the agency didn't explain why it is doing something, then like a remand, I mean, their redressability seems a little more obvious than when a party is saying we want the agency to do more. And the do more is things that are within the FCC's discretion, not a statutory requirement. I feel like the court has to look at how the FCC explained the lines it drew and on sort of our other main objection, which is that rather than saying that once they've identified spectrum that's not being used by incumbent licensees, you should immediately allocate that to the overlay license. They reserve judgment. That does have concrete effects. People were reporting their granular data in July of this year. At that time, that unused spectrum could be immediately moved into the overlay license. Instead, the FCC, again, no one disputes that there is unused spectrum out there, but they reserve judgment on the policy determination about what they're going to do with that without any sort of a reason given in the order. Well, their reason is sort of a, you know, one step at a time sort of reason. You know, it's taking things incrementally, which we have a number of cases saying is permissible. But even when an agency is moving incrementally, no one disputes that is often a reasonable way to proceed. You have to give some reason why you're choosing to proceed beyond simply I would prefer not to take the additional step. I mean, it's often reasonable. That does not mean it's categorically reasonable not to take a step. And when you look at this the entire thrust of the order, again, is that moving this unused spectrum to use not in this sort of balkanized system of overlapping geographic licenses, but making it available to FirstNet, which has already built out a nationwide broadband spectrum for use by public safety users. That's the entire sort of thrust of the rule, and they don't offer any explanation for why you would confine that. The explanation was we need data. And that's part of what the order provided was this system of collection of data so that that could be evaluated and they could, you know, then regulate further once they get the data. So there's two questions, and FCC indicated they needed data for one, and that's the question of where is the areas of unused spectrum that could be put to more productive use if you enter into a sharing agreement with FirstNet. The question we think they should have decided in this order is once you've identified that spectrum, should you make it available to the overlay license? You don't need any data to make that policy determination, and they didn't identify any reason why you would not. Again, given we agree with the vast majority of what the FCC is doing here, but when the entire thrust of the rule is that putting this unused spectrum to use by FirstNet will allow many more public safety users to make productive use of this important public resource, they have to do more to explain why you would just limit the effect of that rule to the handful of... What case do you have that says that the agency identifies a problem, it has to solve the whole problem rather than dealing with solving it incrementally? We acknowledge agencies can proceed incrementally. It's often reasonable to do that. Again, it's a question of providing some reasonable explanation for why you are not taking an additional step. And in this order, I mean, it's just the apparent value of... If FirstNet says you don't have to, you know, solve the whole problem all at once, you can proceed incrementally, why do they even have to say that? We all know that. Well, again, this is why it's often reasonable to proceed incrementally, but that does not mean it's categorically reasonable. And we're talking about an important spectrum that has been dedicated for public safety use for over two decades. The FCC has been recognizing since 2012 that it is not, the spectrum is not being put to use, the use it hoped it would be when it initially set this aside in 2002. And it also recognizes, I mean, this is important broadband services that first responders can use to provide life-saving services. The FCC should do something more than just say that it would prefer not to take that additional step now. All right. Thank you. I will give you some more rebuttal. Thank you. Good morning, Mr. Kandu. Good morning, Judge Wilkins. May I please support Adam Kandu for respondence? This case goes to the heart of commission authority. It's statutory duty to license our nation's spectrum and ensure efficient and effective use of that spectrum. In the authority to make an important but incremental step to solve a problem that is faced for nearly a decade and a half, the persistent underutilization of the 4.9 band. And the commission does three things in this challenged order. It assigns the band manager, when it is selected, a license for spectrum, which is now unassigned. It authorizes the band manager to initiate a sharing agreement for this licensed spectrum. And last, the commission recognizes that FirstNet entering into this agreement will increase band utilization, enhance public safety coordination, and encourage advanced technological deployment. Mr. Kandu, the whole point of this order is to enable FirstNet to use this other band of spectrum, correct? It's not simply to allow FirstNet to use the unassigned parts of the spectrum. It is at least. It is certainly at least. But we should remember that this band manager is playing important coordination functions that respond to the problems that have been facing the band for a decade and a half, which is we have a bunch of unlicensed users who can't coordinate, who are constantly having interference connections or problems, and we don't have one centralized authority who can coordinate this and resolve disputes. And with that authority, the band... Sure. The band manager has some regulatory-like command and control responsibilities. But again, the main point of this order is to allow FirstNet to use arrangement where they are the licensee, but they are specifically not allowed to use spectrum. So the only point of this is to create a non-federal entity to bring this within the FCC jurisdiction to license a federal entity to use a different band of spectrum. Well, it should be remembered that FirstNet is not the licensee. It shares spectrum with the licensee, who is the band manager. And as for being... Could FirstNet have just come to the FCC and asked for an overlaid license in the 4.9 GHz band? Well, that question isn't present, and that's not the way they... I'm curious to get your answer. It goes to a difficult question of FCC authority. Certainly, Section 305 would present serious legal questions as to whether it would be. But here, we're sharing, and it's not an unusual or freakish arrangement. Sharing with federal entities for public safety, as the order cited in the brief says, goes back to 1998, over two decades. And it's because it allows for coordination of public safety and law enforcement, and it allows for more granular sharing that doesn't require a meeting of the FCC and NTIA. It makes a lot of sense. But there's an antecedent legal question about which federal agency has to authorize and gets to oversee the arrangement. And the statutory scheme just seems key to whether the licensee is or is not a federal entity. Correct. But again, you know, the sharing has existed in other places. We've had federal sharing of state and license and FCC license spectrum in many situations. It's not that unusual. Furthermore, as far as oversight, this is a cooperation between NTIA and the FCC. Remember that FirstNet is a subsidiary of NTIA. NTIA picks its board and runs its management. So, and we have consulted with... Does NTIA oversee FirstNet in the way that the FCC oversees its non-federal licensees? I mean, you allocate the spectrum on the front end, but then you have all sorts of ongoing oversight issues. So, who does that? For federal, just for FirstNet in the 7,000 band. Right. Who does that? Well, FirstNet is a... NTIA. Yeah, NTIA does, correctly. And so, NTIA is regulating this. Again, they were aware of this agreement. They acquiesced to it. So, your position is that at no point in this process will NTIA have to separately license or sign off or approve in any formal way when you, A, identify the band manager, and B, approve the contemplated sharing agreement. Your position is FCC is going to do all of that. NTIA is not. Well, I think FirstNet is... Well, NTIA, through its oversight of FirstNet, would certainly be involved in all those decisions. And also, I would remind the court that the tradition of the relationships between NTIA and FCC in the spectrum allocation has always been an informal relationship. It has been one in which we sort of agree what makes sense and go forward. And it has worked fairly well for a long time. What statute or regulation can you point me to that says that NTIA will be involved? I would point generally to the organic statute that creates FirstNet, which places it under NTIA authority. NTIA is involved with the appointment of all of its board members. It has oversight authority. It looks at what it's doing and to ensure that it's maintaining its... What does any of that have to do with involvement with the FCC's decision of selecting the band manager, et cetera? Well, under the system, the band manager will be done through the FCC. So, the short answer is that NTIA and the NTIA in FirstNet will not be intimately involved with that decision. I mean, the closest thing I found to address Judge Wilkins' question on NTIA involvement is the statement buried in footnote 159 of your order in which you report that NTIA is fine with just letting FCC do all this. Right. As I said, NTIA did acquiesce to the situation, and it was on an informal basis. That's the way we've been doing business. And due to the difficulties and subtleties of some of the negotiation, it has worked fairly well. You think that satisfies the statutory scheme, which says NTIA has to allocate Spectrum to FirstNet? Correct. And that the sharing systems and agreements have been around for decades, and they seem to work. They seem to work in being legal are two different things. Well, they seem to further advance an efficient use of the Spectrum. I think that, you know, in general, the basic questions about Spectrum allocation, what is federal, what is licensed, is worked out through an informal agreement between the FCC and NTIA. Which are both part of the executive branch after all. I'm sorry, ma'am? Which are both part of the executive branch after all. Yes, that's right. So this is the way that the system has worked, and it has, you know, I think the record is good as far as moving the system to a more efficient use. Can I ask you a question about how we interpret this order? It seems that FCC in its brief is suggesting that the unassigned Spectrum that the band manager shares with FirstNet is only the Spectrum that was never assigned. I guess, like, either the part or whole of those six states and territories, something like that. Yes, ma'am. But doesn't the order free up additional Spectrum by, you know, by kind of making the incumbent licenses, I guess, smaller in a way? So, like, there's Spectrum that's freed up from the relicensing.  And so isn't that now part of the unassigned Spectrum that is going to be part of the overlay license? I mean, it seems that that has to be right. Like, if those licenses are, in fact, reducing Spectrum use by incumbents, now that Spectrum is unassigned and would go to the overlay license. Is that right? Respectfully, no. Okay. And I would refer the court to Paragraph 59 of the order, where we make clear that unused Spectrum. Not unused. I'm sorry. Unassigned Spectrum. Okay. That's right. But it does come to your question. So there's only a few areas of unassigned Spectrum that nobody has a license at the time the order was written to use. And those are the areas in the four states and two territories. And then there is what we call the unused portion. So what the order did is said, look, incumbents, when the primary person's disorder is to respect your current operations, we don't want to interfere with what you're doing at all. But you have to freeze. Because one of the problems, why we need you to do all this data collection is because we have no visibility into what's on in the Spectrum. So, for instance, let's say there's a state trooper, a state trooper's office, who has license for the entire state. They could be using it for one temporary point-to-point communication, just one little strip of territory in the entire state, and the rest of it's foul. And right now the commission doesn't know that. It can't tell that. So what it said is, look, freeze. And the areas that you're not using will be considered unused. And you can't build into that area until the freeze is over, until we collect information, we know what we're doing. And then you may get it back, or we might, the commission might decide that it should be repurposed. So the re-licensing doesn't create any unassigned Spectrum, it only creates unused That's right. It is, this is not a technical term, but it's kind of in a limbo. And what we're saying is the commission has to look at this, but it has not reassigned that. It doesn't have anyone, no one else. And the new licenses don't make any of that Spectrum unassigned? No, they don't make it unassigned. The BAM manager right now is limited to those few areas, and it would take some type of further action to make those unused into unassigned. And at that point, I know I'm not supposed to concede anything, but at that point, that's when CERC could come and say, look, you've done something to our licenses. But right now, it's sort of in a limbo, it's in a freeze, and we have to collect information because we just don't know what's going on. It seems pretty unlikely, though, given the thrust of this order, that this might be headed towards, oh, never mind, we'll just let the licensees go on as before. Well, yes. I mean, in the sense that, well, I would certainly agree that it will be different. But again, the whole purpose of the data collection is to find out what's going on. And I couldn't say it is certainly possible that everything will go on before. It could also be that there's a huge amount of unused spectrum that commission funds could be used more effectively. Can I ask you a question about the contrary to law arguments that the CERC petitions make? So they say, you know, FirstNet can't operate outside of the license area that was specifically conferred by Congress, and that's the best way to read the Spectrum Act. And in response, the FCC just points to a lot of general authorities that it has, which, frankly, I never find all that persuasive. It's like, oh, we can do anything we want in the public interest, so obviously we can do this. But I guess I'm wondering why the FCC doesn't rely on the specific contracting authority in the Spectrum Act. Is there something about that contracting authority that FirstNet has that doesn't make it a basis for the sharing agreements? Like, to me, just the plain meaning of FirstNet has legal authority to enter into contracts with a whole range of public and private entities suggests that it would have authority to enter into a sharing agreement with the band manager. But maybe there's some reason why that isn't, I'm misunderstanding what that statutory authority means. The FCC doesn't rely on those provisions, and so I just want to understand if there's some reason why I'm misreading. Right. Well, I mean, it could be. We just haven't thought it out. But I think our point would be that the band manager is the licensee. So the band manager has a sharing agreement with FirstNet. FirstNet... The sharing agreement is a contract. That's right. It is sharing. It is a contract. But we're not regulating FirstNet directly. Um, so you're right. FirstNet's authority to enter into the agreement with the band manager would be governed by that. Yes. One of the arguments the Searcy petitioners makes is that FirstNet has no legal authority to do this, and that it's outside the Spectrum Act, which is different from saying the FCC lacks authority under the Communications Act. That's right. I think it's just really a matter of... The Commission believes there's specific regulatory authority, namely that found in 2.103, that directly addresses the situation, and that should be... But that regulation wouldn't answer the question whether... Like, if FirstNet lacked statutory authority to do that, it couldn't gain that authority from regulation. True. But, yeah, no, I agree. I mean, I think that's a... So there's no reason to think that the contracting authority wouldn't cover something. No. Absolutely not. Okay. Thank you. All right. If you have any final points you'd like to make, you can make those. I would just respectfully ask that the court dismiss the judicial review. Thank you very much. Thank you. Mr. Turner. Good morning, Your Honors. Joshua Turner. May it please the Court, Joshua Turner, on behalf of the Paternal Order of Police. FOP represents more than 370,000 officers across the country in communities both small and large, and they understand how important public safety communication, especially broadband public safety communication, is. That's why we're here today enthusiastically supporting the FCC's order, because, as Judge Cassis, you mentioned, this has been an ongoing problem in terms of utilization of the 4.9 gigahertz band. That band is currently 90 percent unoccupied, according to the record. The FCC is collecting some granular data about exactly where that lack of occupation is, but the record shows that for years this band has not lived up to its promise, in contrast to FirstNet. FirstNet has worked exactly as Congress intended. FirstNet has created a nationwide public safety broadband network that FOP members and other public safety professionals are using every day. What does the record show, one way or the other, about whether that FirstNet band, the 7,000, does or does not suffice to enable your important communications? The 700 megahertz band was set aside by Congress for the initial purpose of this public safety broadband network. The record shows FirstNet, I believe, in 2013, filed comments in the record saying, you know, we could make use of the 4.9 gigahertz band, we could use that to provide broadband services, and as we get more built out, and as we push into other newer areas, we will have the need for this additional spectrum to provide 5G and other One of the things that your honors have focused on, which I think is very important, is this question of the band manager and authority. You know, like my counsel for CERCI says, this is just a workaround, right? This is just the FCC trying to do something that it doesn't have the authority to do, but that's not actually what's going on here, right? The band manager has a number of different roles that it plays, one of which is coordinating the spectrum use between incumbents. Another, the FCC has added in the order under review, is to coordinate spectrum use with FirstNet, and to coordinate this national overlay license so that FirstNet can use it. Now, the question of where FirstNet gets the authority to do that is, of course, a good one. That comes from Section 305 of the Communications Act, which delegates to the President the ability to decide how federal agencies and other federal users use the spectrum. And then later sub-delegated to NDIA. Yes. But the President ultimately is the one who has to control federal use of the spectrum. That's the sort of set up, the bilateral set up that is set up by the Communications Act. Broad authority for the FCC to determine what should be done with non-federal uses, and the federal government is, the federal use is controlled by the President. And that's what's happening here. FirstNet's authority to operate in this spectrum will ultimately be at the discretion of the President. If NTIA or the President decides that FirstNet should not use the spectrum, FirstNet will not be allowed to use the spectrum. This is not the same as if FirstNet were being granted a license by the FCC. That's the critical legal distinction here, and it's one that I think, you know, answers, I hope, the Court's questions. Well, but I thought the FCC's position is that that determination by the President or NTIA is unnecessary. All we need to do is think of this as the FCC licensing the non-federal entity, which then contracts with someone. I don't think that that's the, I obviously can't speak for the FCC. I don't think that that's the FCC's position, and I don't think that's how this will work in practice. What the FCC has done is exercise its broad general authority. And I'd feel much better about this if there's some point down the road at which we know that NTIA will formally review this and sign off or not. Well, the memorandum of understanding between the FCC and NTIA contemplates exactly the kind of spectrum sharing arrangements and exactly the kind of collaborative effort that the FCC is engaging in here. But ultimately, Your Honor, the question of whether or not the federal government authorizes FirstNet to use this spectrum is one for the President to make. And Your Honor is exactly right. I mean, there may come a point where the President, for whatever reason, decides that NTIA is not going to authorize this and that FirstNet is not going to move forward with the band manager arrangement. They aren't going to enter into the contract with the band manager to share this spectrum. That is something that is certainly the President's prerogative. And the FCC is not claiming, at least as I understand the order, that FirstNet, that it has authorized FirstNet to operate in this spectrum absent presidential authority. I mean, even if you assume a unitary executive, including the FCC, 100 percent accountable to the President, Congress can still assign a decision to one agency or another to state rather than treasury, both of whom answer to the President. And if they assign it to state, it's state that has to make the decision. Certainly, Your Honor. Without presidential direction. No, no, absolutely, Your Honor. And to be clear, I'm not making an argument based on unitary executive in one way or another, because I think what's happening here is that the way that the Communications Act has apportioned responsibility is being respected. The FCC is taking the action that it needs to take to make this spectrum available for use by the federal government, right, in a shared basis. And that's something that the Commission has done, you know, going back decades, right? The Bendix case we cite in our briefs goes back to 1960, where the Commission makes non-federal spectrum available for federal use. So that's what the role. NTIA's role and FirstNet's role is to come in and operate in that band pursuant to FCC, pursuant to the FCC making the band available for that kind of sharing. But they're doing it under their organic authority. They're doing it under the authority granted by Section 305 and by the Spectrum Act. And, Judge Rao, I think you were exactly right. Which require assignment of that spectrum to FirstNet by NTIA. The Spectrum Act requires assignment of... No, just 305. Oh, sorry. I forget about this. So Section 305 says that the President has the discretion to assign frequency use by federal agencies, yes. And not FCC. Not FCC. Right. But FCC has the ability to make what is otherwise non-federal spectrum available for federal use, as long as that use is under the auspices of the President under Section 305, which is what's happening here. So the FCC can say any non-federal spectrum that the FCC has control over, the FCC can say, we're going to make this available for federal use too. We're not directing the federal government to use this spectrum. We're not requiring them to do it. We don't have the authority to do that. We're making the spectrum available for federal use should the President decide that he wants to use that spectrum for whatever purposes he wants to use it. Now, wouldn't the order require some presidential action or finding before that is implemented? Well, the order contemplates that there will be the band manager and the band manager will enter into a sharing agreement with FirstNet, and that won't take effect until FirstNet and the band manager reach this spectrum sharing agreement. So that's the sort of point at which the executives in the guise of NTIA and FirstNet have agreed to use the spectrum that had been made available to them by the FCC in the guise of this band manager. So that's the point, Your Honor, where there's sort of federal action, presidential action. And I don't think there's anything that requires any particular mechanism by which the President decides to utilize or assign spectrum. Certainly Section 305 does. Section 305 just says it's up to the President to decide how to do it. I don't think that the Commission has to say, we need a presidential finding before we make this available. I don't think there's anything in the law that requires that. Certainly Section 1422 does not. Nothing in the Spectrum Act does. And so just to point back to a question that Judge Rao asked, you asked, I think, very correctly, is there authority under 1422 for FirstNet to use spectrum pursuant to agreement with license holders? And I think I've heard Counsel for Searcy say yes, that under 14, that the Spectrum Act allows FirstNet to contract with state and federal license holders in order to use their spectrum pursuant to 2.103. With their consent. With their consent. But if that's true, if the Spectrum Act does allow FirstNet to use that spectrum, that answers the authority question, means it can operate outside the 700. We would think that that would be a fatal concession by the other side. So, sorry, can you tell me if this is unfair, but can you give me a yes, no answer to this question? I will try. Before FirstNet can operate in this new band, will there have to be further government action by NTIA or the President to authorize some further action? I don't know the answer to that question, Your Honor. And I apologize for not knowing the answer to that question. Certainly FirstNet, pursuant to its own internal processes, and as Counsel for FCC pointed out, FirstNet is itself an independent agency within NTIA. So FirstNet is, in some sense, NTIA itself. Certainly FirstNet will have to enter into a legally binding contract with the band manager in order to share the spectrum. If you can't answer that question yes, that takes a lot of the force out of your argument that the FCC is just cleaning things up on its end, but there's a whole different set of regulatory authorizations that have to happen on the FirstNet end. Well, and what that might point to is a ripeness problem, right? If where we end up is the Commission has done all of its work, it's done everything it needs to do, everything within its authority to make the spectrum available, and there's a question now of whether NTIA has the authority that it needs to, or has exercised the authority that it needs to exercise in order to make good on that promise, then maybe that's a problem. That's for down the road. That's not for today, because the Commission doesn't have control over that part of the process at all. And so all the Commission can do is say, look, we've heard from FirstNet. FirstNet came in and filed something in the record saying that we'd love to have this spectrum. We'd love to make use of it. We've looked at the FCC, at the authority. We've looked at the Spectrum Act. We're confident that FirstNet can make use of this spectrum if we make it available to them. And so it's very reasonable for us to say we're going to adopt an order that prepares the ground for that kind of sharing agreement. And, you know, ultimately, if it turns out that doesn't work, for whatever reason, legally or otherwise, the Commission may have to revisit it. But for today, the question is, was this a reasonable order? And the answer is certainly yes, because this is exactly the kind of creative problem solving that the Commission was designed to address when it was given this sort of plenary authority over allocating the nation's spectrum. Any other questions? No, thank you. All right. Thank you. Thank you. Ms. Amundson, we'll give you three minutes for rebuttal. Thank you, Your Honor. I'd like to briefly address a couple of questions that Judge Katsas asked counsel, and then also address Judge Rao's contract point. So first, Judge Katsas asked counsel for the FCC, could FirstNet come to the Commission and ask for a license to the 4.9 ban? In fact, that is what FirstNet did. FirstNet did come to the Commission and ask for a license to 4.9 ban. And once Cersei and others pointed out that that would be unlawful, that is when the Commission and PSSA pivoted to what became the eventual sort of workaround of the ban manager pass-through of spectrum to FirstNet. Judge Katsas, you also asked what the record showed as to the use of the 700 megahertz spectrum for public safety and FirstNet's need to actually acquire additional spectrum on the 4.9 gigahertz spectrum. In fact, Cersei put in the record below that only a fraction of the 700 megahertz spectrum is currently used for public safety entities, and it is used primarily for AT&T to serve its commercial subscribers. AT&T certainly wanted access to an additional 50 megahertz of spectrum in the 4.9 gigahertz ban. And therefore, AT&T and FirstNet made comments before the Commission suggesting the workaround proposal that the Commission eventually adopted, such that while this goes to FirstNet, it is really changing the character of the ban in that it will be available to AT&T for its commercial subscribers, while AT&T's competitors have to purchase spectrum at auction to serve public safety entities. So is that the workaround? I mean, could FCC free up spectrum and just decide that it is for federal use, and so therefore could be allocated by NTIA? It is my understanding that the FCC can make spectrum available for federal use, but they can't license it to a federal entity, but they could make it available for a federal entity. Right, so in the abstract. But what I think we need to do here is look very specifically at the situation we have here, which is the Spectrum Act, where we have Congress specifically talking about what it wanted FirstNet to do, where it wanted FirstNet to operate, what spectrum it was giving to FirstNet to operate on that spectrum, to operate its network. And so, Deirdre, I just wanted to address directly also your questions about the contracting authority, which as counsel for the commission has conceded and no one raised, so that those were not arguments that the commission raised or that it's supporting interveners or petitioner raised, that in fact it was the contracting authority that provides FirstNet with authority to operate. When we interpret a statute, we can't not read provisions of the statute to determine the best meaning of the law. So I don't think that's fair enough. They've defended that they've made the argument that it's consistent with the statute. So we can't not look at provisions of the statute because the commission failed to cite that. So had they raised that, what we would have had the opportunity to address in our brief is the fact that that provision falls under 1426b.1, which again talks about the single public safety wireless license granted under section 1421 of this title. And then section 1421 in turn again specifically refers to the 700 megahertz speed lock spectrum. We would ask the court to grant the petitions of Cersei, Bart, and the sheriffs. Thank you. Thank you. All right. You are out of time. We'll give you one minute. Thank you, Your Honor. Just on the need for the spectrum, the order makes clear that the more spectrum, especially this sort of mid-band spectrum that's particularly good for advanced uses like 5G, the more that's made available to FirstNet, the better. And the fact that FirstNet can make use of that while rigorously prioritizing its public safety traffic is part of what made PSSA think it was such a natural candidate to make productive use of this spectrum. Counselor of the FCC noted unused spectrum is just being left in limbo as a result of this order. We respectfully think that that was unreasonable. Thank you. The case is submitted.
judges: Wilkins; Katsas; Rao